UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD C. BLASIUS, ET AL.,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.
                                    /

Case No. 09-13182
(consolidated with
Case No. 09-13198)
Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [17,18] AND DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT [16]**

These consolidated tax disputes come before the Court on the parties' cross-motions for summary judgment. Plaintiffs' Edward C. and Virginia Blasius and James E. and Mary Jo Blasius filed these consolidated actions seeking tax refunds based on identical arguments that the Internal Revenue Service ("IRS") illegally assessed and collected taxes from them for the 1994 tax year. The parties do not contest any of the material facts and agree that resolution of these consolidated cases turns on the Court's interpretation of their identically-worded extension agreements and the same provisions of the Internal Revenue Code ("I.R.C."). For the reasons stated below, this Court determines that the Internal Revenue Service's tax assessments were timely made. Accordingly, Defendant's motion for summary judgment is GRANTED, and Plaintiffs' cross-motion for summary judgment is DENIED.

**I.     Facts**

The following facts have been stipulated to by the parties [14].

### A. Edward C. and Virginia M. Blasius

In the first of these consolidated cases, Plaintiffs Edward C. and Virginia M. Blasius are husband and wife residing within the Eastern District of Michigan. The tax year at issue is the one ending December 31, 1994. The amount of the claim that the IRS proposed to disallow is $9,207.00, plus interest as provided by law. (*Id.* at ¶¶ 1-2.)

On April 15, 1995, Plaintiffs filed their 1994 Form 1040. Plaintiffs, through their power of attorney Erwin Rubenstein, and Defendant entered into an Extension Agreement — IRS Form 872 — with respect to the 1994 tax year. (*Id.* at ¶¶ 3-4.) The IRS Form 872, dated November 9, 1998, provides, in pertinent part, that the amount of tax due:

> may be assessed at any time on or before December 31, 1999. <u>However</u>, <u>if</u> a notice of deficiency in tax for any such period(s) is sent to the taxpayer(s) on or before that date, <u>then</u> the time for assessing the tax <u>will be further extended by the number of days the assessment was previously prohibited, plus 60 days</u>.

(*Id.* at ¶ 5 quoting Pls.' Ex. A at 3 (emphasis added).)

On March 31, 1999, Defendant sent Plaintiffs a Statutory Notice of Deficiency. On June 28, 1999, Plaintiffs petitioned the Tax Court for a redetermination of the deficiency. On July 11, 2001, the Tax Court entered its decision document. On October 9, 2001, the Tax Court decision became final because no appeal was filed. Sixty days from that date is December 8, 2001. (*Id.* at ¶¶ 6-10.)

On December 31, 2001, the IRS made its assessment. This was 83 days after the Tax Court decision became final. (*Id.* at ¶¶ 11-12.)

On January 22, 2002, Plaintiffs paid the assessment and interest. On January 13, 2004, Plaintiffs filed a timely claim for a refund of the assessment in the amount of $9,207.00. On January 9, 2009, the IRS issued a proposed disallowance of Plaintiffs'

refund claim. On February 9, 2009, Plaintiffs filed a timely protest of the claim disallowance requesting that the matter be referred to the Detroit Appeals Division. In a letter dated June 5, 2009, Plaintiffs were notified by Defendant that their request for an appeal and claim for refund were rejected. (*Id.* at ¶¶ 13-17.)

### B. James E. and Mary Jo Blasius

In the second of these consolidated cases, Plaintiffs James E. and Mary Jo Blasius are husband and wife and reside within the Eastern District of Michigan. The tax year at issue is the one ending December 31, 1994. The amount of the claim that the IRS proposed to disallow is $69,393.00, plus interest as provided by law. (*Id.* at ¶¶ 18-19.)

On October 16, 1995, Plaintiffs filed their 1994 Form 1040. On February 9, 1998, Plaintiffs, through their power of attorney Erwin Rubenstein, signed an Extension Agreement — IRS Form 872 — with respect to the 1994 tax year. On November 9, 1998, Plaintiffs and Defendant entered into an additional Extension Agreement — IRS Form 872 — with respect to the 1994 tax year, extending the assessment date through December 31, 1999. (*Id.* at ¶¶ 20-22.) That November 9, 1998 IRS Form 872 provides, in pertinent part, that the amount of tax due:

> may be assessed at any time on or before December 31, 1999. <u>However</u>, <u>if</u> a notice of deficiency in tax for any such period(s) is sent to the taxpayer(s) on or before that date, <u>then</u> the time for assessing the tax <u>will be further extended by the number of days the assessment was previously prohibited, plus 60 days</u>.

(*Id.* at ¶ 5 quoting Pls.' Ex. A at 1 (emphasis added).)

On March 31, 1999, Defendant sent Plaintiffs a Statutory Notice of Deficiency. On June 28, 1999, Plaintiffs petitioned the Tax Court for a redetermination of the deficiency. On July 11, 2001, the Tax Court entered its decision document. On October 9, 2001, the

3

Tax Court decision became final because no appeal was filed. Sixty days from that date is December 8, 2001. (*Id.* at ¶¶ 23-27.)

On December 31, 2001, the IRS made its assessment. This was 83 days after the Tax Court decision became final. (*Id.* at ¶¶ 28-29.)

On January 22, 2002, Plaintiffs paid the assessment and interest in the amount of $69,393.00. On January 8, 2004, Plaintiffs filed a timely claim for refund of the assessment paid. (*Id.* at ¶¶ 30-31.) Plaintiffs received a letter from Defendant dated June 19, 2007, proposing a disallowance of the claim for refund in the full amount of $69,393.00. On July 17, 2007, Plaintiffs timely filed a Protest of Claim Disallowance requesting that the matter be referred to the Detroit Appeals Division. (*Id.* at ¶¶ 32-33.) No further action was taken on this request, and this lawsuit was timely commenced.

## II.  Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). When the moving party has met its burden under rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all

justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

**III. Analysis**

The stipulated facts are essentially the same for both sets of Plaintiffs in these consolidated cases. This simplifies application of the controlling legal principles. To further simplify its discussion, the Court will use the stipulated facts regarding Plaintiffs James and Mary Jo Blasius.

Plaintiffs argue that, if their IRS Form 872 and relevant sections of the Internal Revenue Code are properly construed, the IRS should have made its assessment for tax year 1994 on December 8, 2001. Because Defendant ('the government") did not make its assessment until December 31, 2001, Plaintiffs argue that the assessment is untimely; thus, they are entitled to a refund of $69,393.00. The government argues the opposite. This Court agrees with the government. The IRS made its assessments in a timely manner.

The Court begins its analysis with a discussion of the relevant limitations periods provided in the Internal Revenue Code ("I.R.C."). *See, e.g.,* 26 U.S.C.A. §§ 6501(a), 6501(c)(4), 6503(a)(1) (West 2009 Supp.).

"As a general rule, taxes must be assessed within three years after a return is filed." *Depasture v. United States (In re Depasture)*, 419 B.R. 518, 520 (Bankr. M.D. Ga. 2009) (citing I.R.C. § 6501(a)). The Code, however, does allow for extensions of the three-year statute of limitations for tax assessments when consented to in writing by the taxpayer and the Secretary. The first extension agreement must be made before the initial three year

5

limitations period expires. That agreed-upon extended period may be further extended by written consent of the taxpayer and the Secretary as long as that agreement is executed before the expiration of the previously agreed-upon extension date. I.R.C. § 6501(c)(4)(A).[1]

Plaintiffs here entered into two such extension agreements known as IRS Form 872s. Specifically, Plaintiffs James E. and Mary Jo Blasius, through their power of attorney Erwin Rubenstein, signed an extension agreement — IRS Form 872 — on February 9, 1998 with respect to the 1994 tax year (before the original three year statute of limitations period for assessments expired). On November 9, 1998 (before the agreed-upon extended period expired), Plaintiffs, through their power of attorney Erwin Rubenstein, entered into an additional extension agreement — IRS Form 872 — with respect to the 1994 tax year. That November 9, 1998 IRS Form 872 provides, in pertinent part, that the amount of any federal income tax due for the 1994 tax year:

> may be assessed at any time on or before December 31, 1999. However, if a notice of deficiency in tax for any such period(s) is sent to the taxpayer(s) on or before that date, then the time for assessing tax will be further extended by the number of days the assessment was previously prohibited, plus 60 days.

---

[1]Section 6501(c)(4)(A) provides as follows:

> Where, before the expiration of the time prescribed in the section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

I.R.C. § 6501(c)(4)(A).

(Pls.' Ex. A at 1 (emphasis added).)

Another provision of the Code, I.R.C. § 6503(a)(1), suspends the running of the statute of limitations period for assessing taxes from the time a taxpayer is mailed a notice of deficiency until 60 days after a decision of the Tax Court becomes final.[2] "A Tax Court decision becomes final 90 days after it is entered." *United States v. Bidegary*, No. CV-S-03-546-RCJ(RJJ), 2004 WL 1418666 (D. Nev. May 12, 2004) (citing I.R.C. § 7483 and *United States v. Hans*, 921 F.2d 81 (6th Cir. 1990)). The courts have also recognized that "[a] limitations period extended by § 6501(c)(4) is a limitations period within the meaning of § 6501 and subject to the suspension provisions of § 6503(a)(1)." *Clark v. Comm'r*, No. 95-60054, 1995 WL 581832, *1 (5th Cir. Sept. 5, 1995) (citing *Meridian Wood Prods. Co. v. United States*, 725 F.2d 1183, 1188 (9th Cir. 1984), and *Ramirez v. United States*, 538 F.2d 888, 893 (Ct. Cl. 1976)).

Here, Plaintiffs were mailed a statutory notice of deficiency on March 31, 1999, and the Tax Court's decision denying Plaintiffs' petition for a redetermination of the deficiency

---

[2]Section 6503(a)(1) provides, in pertinent part, that:

> The running of the period of limitations provided in section 6501 . . . on the making of assessments . . . in respect of any deficiency as defined in section 6211 (relating to income . . . taxes), shall (after the mailing of a notice under section 6212(a)) be suspended for the period during which the Secretary is prohibited from making the assessment or from collecting by levy or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter.

I.R.C. § 6503(a)(1).

became final on October 9, 2001. Sixty days from that date is December 8, 2001. (Stip. Facts ¶¶ 23-27.)

The relevance of that December 8, 2001 date is the crux of Plaintiffs' lawsuit. Plaintiffs argue that December 8, 2001 is the last date for a timely assessment. The government, on the other hand, argues that on December 8, 2001, the extended statute of limitations period was no longer "suspended" and thus began to run again. It construes the language in the IRS Form 872 extension agreement as follows:

The parties agreed to extend the statute of limitations period for making an assessment for tax year 1994 to December 31, 1999;

Because a notice of deficiency was mailed on March 31, 1999 (275 days before the December 31, 1999 agreed-upon extended statute of limitations date expired) and the Tax Court's decision did not become final until several years later, Section 6503(a)(1) of the Tax Code suspended the statute of limitations and prohibited the IRS from making an assessment during that entire time period; and

Once the statute of limitations period was no longer suspended (or tolled) by operation of I.R.C. § 6503(a)(1), it began to run again and did not expire before the IRS made its assessment in the amount of $69,393.00 against Plaintiffs.

Specifically, the government argues, the IRS is permitted to "tack on" the remaining time in the Form 872 extension agreement after the period during which the assessment statute is tolled, e.g., the 275 days between the March 31, 1999 mailing date of the notice of deficiency and the December 31, 1999 extended expiration date could be tacked onto

the December 8, 2001 date when the statute of limitations was no longer statutorily "suspended" or tolled. (Def.'s Br. at 10, 12.)

Plaintiffs argue that the government misconstrues the plain language of their Form 872. They further argue that, to the extent there is any ambiguity in the language, it should be construed to preclude any "tacking on" of time remaining in the Form 872 extension agreement.

This Court agrees with the government. The plain, unambiguous language of the parties' IRS Form 872 permits it to tack on the time remaining in that extension agreement, and the IRS's assessment was timely. With the exception of a single decision that has been repeatedly rejected, the federal courts have construed the above-referenced Code sections and identically worded Form 872 extension agreements consistent with this Court's decision.

For example, in *In re Depasture*, the bankruptcy court considered language identical to that found in Plaintiffs' Form 872 extension agreement. 491 B.R. at 522. It rejected a "no tacking" argument similar to Plaintiffs in light of a Court of Claims decision interpreting the tolling provision in I.R.C. § 6503(a)(1) and its precursor and contrasting that statutory language with the identical language in Plaintiffs' IRS Form 872. *Id.* (citing *Ramirez*, 538 F.2d at 890-93). It observed that the *Ramirez* court found a "'striking similarity between section 6503(a)(1) and the proviso contained in the [Form 872 extension] agreement,'" and thus concluded that "'the latter was designed to foster the policy underlying the former.'" *In re Depasture*, 491 B.R. at 522 (quoting *Ramirez*, 538 F.2d at 892). It cited with approval the *Ramirez* court's rationale "that the word 'extend' is tantamount to 'suspend' given that

9

section 277(b) of the Revenue Act of 1924, precursor to section 6503(a)(1) of the current Code, used the word 'extended' to achieve the same effect that 'suspended' achieves in the current section of the Code." *Id.*

The bankruptcy court provided an additional reason to reject the debtor's argument that "the IRS may not 'tack on' the remaining 73 days of the limitation period that was extended pursuant to the § 6501(c)(4) agreement (Form 872)." *Id.* at 521. It concluded that the debtor was improperly "confusing how a suspension of a statute of limitation operates." *Id.* at 522. After explaining how the debtor was confusing and misinterpreting the Code, the bankruptcy court then applied the properly interpreted Code sections to the debtor's Form 872, and concluded that "tacking-on" was permitted.

> Once the suspension under either the proviso of Form 872 or the statutory language of § 6503 comes to an end, the limitations period begins to run again. The Debtor seems to have confused the 60-day suspension provided in either § 6503 or Form 872 as a grace period during which the IRS may make an assessment. This is an erroneous interpretation of the law. The 60-day period of extension/suspension is a period of time in which the IRS is forbidden from making an assessment. *See Ramirez*, 538 F.2d at 890-93. Thus, once that period ends, the statute of limitations will continue to run its course. *Id.*
>
> The assessment limitations period was tolled by statute in Debtor's case as follows:
>
> - For the 90 days after the notice of deficiency was mailed. I.R.C. § 6213;
> - Plus the period during which the Tax Court case was pending. I.R.C. § 6503(a);
> - Plus 90 days after the Tax Court issued its decision . . . until that decision became final. I.R.C. § 7481(b);
> - Plus 60 days. I.R.C. § 6503(a)(1) or Form 872 proviso.

10

> This brings the end of the tolling period to November 28, 2003. The issuance of the notice of deficiency on October 19, 1999 in no way truncated the agreed upon expiration date of December 31, 1999. <u>Therefore, the 73 days left remaining between the October 19, 1999 issuance of the notice of deficiency and the agreed upon limitation date of December 31, 1999 would be tacked onto the date the suspension ended</u>. This results in the assessment period coming to an end on February 9, 2004. Because the IRS assessed the Debtor's tax liabilities for 1994 and 1995 on January 16, 2004, the tax assessments were timely made.

*Id.* at 522-23 (emphasis added).

The same reasoning and result apply here. The mailing of the notice of deficiency to Plaintiffs on March 31, 1999 in no way truncated the agreed-upon expiration date of December 31, 1999. Therefore, the 275 days remaining between the March 31, 1999 issuance of the notice of deficiency and the agreed-upon limitation date of December 31, 1999 would be tacked onto the date the suspension ended. This results in the assessment period coming to an end on September 9, 2002. Because the IRS assessed Plaintiffs' 1994 tax liabilities on December 31, 2001, the tax assessments were timely made.

Numerous other courts have rejected Plaintiffs' "no tacking" argument. For example, the Tax Court in *Aufleger v. Comm'r*, 99 T.C. 109, 115-120 (1992), expressly rejected the "no-tacking" holding in *Hoosac Mills Corp. v. Comm'r*, 75 F.2d 462 (1st Cir. 1935); a decision upon which Plaintiffs rely, observing that other courts "have distanced themselves from the decision in *Hoosac Mills*. *Id.* at 117, 120 (citing cases including *Ramirez*, 538 F.2d at 893 n.10). The *Aufleger* court interpreted I.R.C. § 6229(d)'s three-year statute of limitation for partnership-related tax assessments "to mean that the unexpired part of the 3-year limitations period under section 6229(a) should be tacked on after the period during which an action may be brought." *Id.* at 117. It did so after determining that "[t]he plain

11

meaning of the word 'suspend,' in the context of a statute of limitations, is to interrupt temporarily the running of the limitations period with the expectation that the running of the limitations period will resume at the end of the suspension." *Id.* (citing Black's Law Dictionary 1446 (6th ed. 1990)).

This "tacking on" principle has also been applied in circumstances where there is no Form 872 extension agreement. *See Bidegary*, 2004 WL 1418666 at *3 (observing that "[a]ny unexpired portion of [§ 6501's three-year] limitation period" began to run again 60 days after the Tax Court's decision becomes final and determining that, because the government sent its notice of deficiency to the taxpayer 17 days before the three year limitations period ran, "the Government had 17 days after June 3, 1993 [60 days after the Tax Court decision became final] to make an assessment," and it did so). *See also United States v. Anderson*, 169 F. Supp. 2d 952, 955-56 (N.D. Ind. 2001) (same).

Plaintiffs rely on two decisions in support of their "no tacking" argument: *Hoosac Mills*, 75 F.2d 462 (1st Cir. 1935) and *Ripley v. Comm'r*, 103 F.3d 332 (4th Cir. 1996). Their reliance is misplaced.

As an initial matter, this Court notes that it is not bound by decisions from the First or Fourth Circuit Courts of Appeal. The Sixth Circuit, albeit in dicta, has approved "tacking on." *See United States v. Hans*, 921 F.2d 81, 82 (6th Cir. 1990). In *Hans*, the issue before the Sixth Circuit was whether a tax court decision becomes final 90 days after the decision is entered. It determined that it was. In light of that holding, it reversed the district court's decision that the three year statute of limitations in I.R.C. § 6501(a) had run. *Id.* at 81. It explained its decision as follows:

> [T]he government [does not] dispute the district court's conclusion that the statute of limitations was tolled from the time the IRS issued the deficiency notice to Hans until 60 days after the decision of the tax court became final. *See* I.R.C. § 6503(a). Thus, <u>since there were 17 days remaining in the original three-year limitations period when the IRS issued the deficiency notice, the IRS had 77 days after the date on which the tax court's judgment became final in which to make an assessment against Hans.</u>

*Id.* at 82 (emphasis added).

More importantly, the reasoning in *Hoosac Mills* has been repeatedly rejected by the federal courts. *See Aufleger*, 99 T.C. at 117-19 (citing cases); *Ramirez*, 538 F.2d at 893 n.10 (citing cases). This Court also declines to adopt the reasoning and result in *Hoosac Mills*.

Plaintiffs' reliance on *Ripley* is misplaced because the Form 872 extension agreement at issue in that case contained a second paragraph with language not present here. That additional paragraph reads as follows:

> (2) This <u>agreement ends on the earlier of</u> the <u>above expiration date</u> or the <u>assessment date</u> of an increase in the above tax that reflects the final determination of tax and the final administrative appeals consideration.

*Ripley*, 103 F.3d at 334 (emphasis added). The Form 872 in *Ripley* was an agreement to extend the one-year statute of limitations, I.R.C. § 6901(c), for notices of federal gift taxes owed by a transferee or donee. *Id.* The *Ripley* court construed this paragraph as "expressly providing that the *agreement* would terminate upon a specified date," and found that this "language [wa]s controlling." *Id.* at 336 (emphasis in original). The specified date was identified as the earlier of: (a) the date described in the first paragraph of Ripley's

13

Form 872; or (b) April 7, 1992 — the date the IRS assessed Mrs. Ripley for additional gift taxes.

The *Ripley* court determined that it "need not set forth at length [its] calculation of the first date referenced <u>because the second</u> — 'the assessment date'" of April 7, 1992 — was "clearly more than one year prior to the September 13, 1993 mailing of the notices of transferee liability to the Ripleys" and was thus untimely. *Id.* at 337 (emphasis added). As summarized by the *Ripley* court, "the plain language drafted by the IRS in the Form 872 Mrs. Ripley executed dictates a conclusion that the time period for assessing tax against her ended April 7, 1992." *Id.* at 337-38.

Plaintiffs' arguments here fail to acknowledge the presence and importance of this additional paragraph in the *Ripley* Form 872. They likewise fail to acknowledge the *Ripley* court's agreement with the Court of Claims' decision in *Ramirez* which approved of "tacking on" under circumstances similar to those presented here. The *Ripley* court distinguished the rationale and holding in *Ramirez* because it did not contain the additional language contained in *Ripley*. It explained that important distinction as follows:

> We agree that statutes of limitations extended by agreements entered pursuant to [I.R.C.] § 6501(c)(4) are subject to suspension pursuant to § 6503(a)(1). But, in our view, this conclusion does not compel a holding that an express provision declaring that the extension agreement itself will terminate on a specified date is ineffectual. . . .
>
> The *Ramirez* court addressed the timeliness of an assessment, considering the language in the first paragraph of Form 872 extending the period for assessment in the event that a timely notice of deficiency is issued and the statutory suspension of § 6503(a)(1). *Ramirez*, 538 F.2d at 890-93. The court ruled that the plain language of the Form 872 provided for an extension of the limitations period that, on the facts presented, was identical to the statutory limitations period as suspended by § 6503(a)(1). *Id.* In addition, the court noted that a

14

limitations period, as extended agreement, was subject to suspension pursuant to § 6503(a)(1). *Id.* at 893. Again, we agree; however, this reasoning provides no support for the ruling of the tax court that the language [contained in the second paragraph] terminating the extension agreement on the Form 872 executed by Mrs. Ripley was ineffectual.

*Ripley*, 103 F.3d at 336, n.5.

Plaintiffs' attempts to distinguish the decisions discussed above that approve of "tacking on" lack merit.[3] With the exception of the decision in *Hoosac Mills*, which this

---

[3]Plaintiffs' additional reliance on a 1989 IRS Non Docketed Service Advice Review, 1989 IRS NSAR 9172, 1989 WL 1173050 (IRS NSAR Sept. 25, 1989), addressing the statute of limitations for partnership items, is likewise misplaced. First, as expressly stated in that document, it "may not be used or cited as precedent." *Id.* at 7 (citing Section 6110(j)(3) of the Internal Revenue Code). Second, Plaintiffs selectively quote from that document and misrepresent its content. The full quote does not refute the government's "tacking on" position. Rather, it recognizes the contrary position in *Hoosac Mills* and thus recommends that an assessment be issued prior to the tacked on period to avoid any court challenge:

> "[T]he unexpired portion of the one year period under section 6229(f) remaining at the time the notice is issued may be 'tacked on' to the end of the above 'suspension' periods. However, since there is a split in the circuits as to whether a tack on period exists under similar statutes, we strongly recommend that assessment occur or a notice of deficiency be issued prior to the time the tack on period begins. *See Hoosac Mills Corp. v. Commissioner*, 75 F.2d 462 (1st Cir. 1935) (notwithstanding 'suspension' of section 6501 by stay provision, no tack on period exists). *Contra Ramirez v. United States*, 538 F.2d 888 (Ct. Cl. 1976); *Clark v. Commissioner*, 90 T.C. 68, 71 (1988)."

*Id.* at 5. Finally, a more recent Non Docketed Service Advice Review, addressing what impact the issuance of a designated summons will have on a statute of limitations, lends additional support to the government's position. *See* 1995 IRS NSAR 5952, 1995 WL 1922127 (IRS NSAR Oct. 24, 1995). The question before the IRS was "whether the time which remained on the statute of limitations when the designated summons was issued should be tacked on to the statutory period at the close of the period during which the statute of limitations is suspended under section 6503(k)." *Id.* at 1. The IRS answered that "[i]t is our view that the statute clearly provides for such tacking." *Id.* It explained:

> "The question of whether the time which remained on the statute of limitations when the designated summons was issued is tacked on to the

15

Court declines to follow, the federal courts have consistently approved of the government's "tacking on" argument.

**IV.   Conclusion**

For the reasons stated above, this Court concludes that the IRS's tax assessments made on December 31, 2001 were timely made; and thus, Plaintiffs are not entitled to tax refunds.  Accordingly, Defendant's motion for summary judgment is GRANTED, and

---

>    statutory period at the end of the suspension period turns on the meaning of the terms 'suspended.'  Although there are no cases or regulations interpreting the meaning of the term 'suspended' for purposes of section 6503(k), the courts have addressed the meaning of the term 'suspended' as used in other provisions of the Code relating to the statute of limitations on assessments. Consistent with the common meaning of the term, the courts have uniformly held that when the statute of limitations is 'suspended,' the running of the statutory period stops during the period of suspension and that any time which remained on the statutory period when the suspension began does not expire during the period of suspension but is added on to the statutory period when the suspension ceases. *See, e.g., United States v. Hans*, 921 F.2d 81 (6th Cir. 1990) (statute of limitations suspended under I.R.C. § 6503(a)(1)); *Hanover Ins. Co. v. United States*, 880 F.2d 1503 (1st Cir. 1989) (statute of limitations suspended under section 6503(a)(1)); *Aufleger v. Comm'r*, 99 T.C. 109 (1992) (statute of limitations suspended under section 6503(i)); *Bales v. Comm'r*, 22 T.C. 355 (1954) (statute of limitations suspended under predecessor of I.R.C. § 6503(a)(1)); and *Ramirez v. United States*, 538 F.2d 888 (Ct. Cls. 1976) (statute of limitations suspended under section 6503(a)(1)).  Thus, for example, where 75 days remains on the statute of limitations at the time the statute of limitations is 'suspended,' 75 days will still remain on the statute of limitations when the period of suspension ends."

*Id.* at 2.

Plaintiffs' cross-motion for summary judgment is DENIED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: May 21, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 21, 2010, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager